**INTERNATIONAL SHOE COMPANY,**
**Plaintiff–Appellant,**

v.

**CENTERRE BANK N.A.,**
**Defendant–Respondent.**

No. 54523.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 28, 1989.

Robert F. Wiegert, St. Louis, for plaintiff-appellant.

Theodore Carter III, David S. Slavkin, Bryan, Cave, McPheeters & McRoberts, Gretchen Garrison, Bryan, Cave, McPheeters & McRoberts, St. Louis, for defendant-respondent.

SMITH, Presiding Judge.

International Shoe, a division of Interco, appeals from a judgment against it in a court-tried case. The trial court found no liability by Centerre, now Boatmen's Bank, for loss sustained by Interco as the result of the non-payment by a foreign customer for shoes delivered to the customer. We affirm.

Centerre agreed to act on behalf of Interco in the transmission of documents involved in the sale of shoes to Boviard Supply PTE, Ltd., a foreign customer located in the Orient. Centerre agreed to transfer invoices and bills of lading to the Bank of Hong Kong. The documents were to be delivered "against payment" within sixty days after sight. The documents were presented to Boviard on June 13, 1986, resulting in a maturity date of August 13, 1986. Boviard refused to accept the terms and advised the Bank of Hong Kong that the documents should be delivered "against acceptance." This change would allow Boviard to obtain the documents needed for release of the merchandise upon its acceptance of the sight draft rather than upon its payment of the draft. The effect of such a change would be to eliminate the merchandise as security for payment. The Bank of Hong Kong notified Centerre on June 18 of Boviard's refusal of the terms and requested Centerre "please instruct urgently by return telex." Centerre responded that the change in terms was acceptable.

For reasons unknown the merchandise had in fact been released to Boviard on or before June 12. On that date it communicated to Interco about a deficiency in the shipment. Boviard did not make payment for the shipment on August 13 or subsequently. Interco sued Centerre alleging that it failed to act in good faith and exer-

cise ordinary care in the collection of payment by failing to advise Interco that payment had not been made prior to the release of the merchandise. It sought damages of $14,104, the amount of the sight draft.

Interco makes no contention that Centerre was in any way responsible for the premature release of the merchandise to Boviard. It rather premises liability on Centerre's failure to timely advise Interco of the change in terms of the sight draft. Interco contends that if it had been advised of such change in timely fashion it would have known that its security had been abrogated and it would have proceeded to attempt recovery before Boviard went into receivership. It is questionable that the record supports a conclusion that such an attempt would have been successful, but we need not reach that issue. The evidence concerning Centerre's authorization to change the terms becomes critical.

The original collection agreement between Interco and Centerre provided "Please call Paul Herman 426–1658 if you have any questions." Not until after the problems with this transaction had arisen and Interco was aware of them did it request that communications between it and Centerre be in writing. Sec. 400.3–508(3) RSMo 1986, provides that notice of dishonor may be given in any reasonable manner, either oral or written. Centerre produced as a witness a clerk in its international collection department on June 18. She identified the telex received from the Hong Kong bank. She also identified her handwriting and initials on the telex and her handwritten notation "6/18/86 Called Paul Herman at International Shoe. He authorized tenor to be changed. psm." She had no independent recollection of the transaction. She also testified that she had instructions to make phone calls on "urgent things" which this telex was. The telex and handwritten note thereon were admitted into evidence without objection. The clerk was the one who sent the change authorization to the Hong Kong bank.

Paul Herman testified initially that he did not recall receiving a call about the requested change of tenor. He subsequently testified that he specifically recalled not receiving a call on that subject matter. Herman had returned from vacation on June 17. Interco had responded to Boviard's June 12 communication concerning a deficiency in the shipment on June 13 by advising that Herman was on vacation. On June 18 Herman responded to Boviard's telex concerning a deficiency. By notice dated June 24 Interco was advised by Centerre that its sight draft had been accepted to mature on August 13. An August 13 maturity date was inconsistent with presentment or payment prior to June 13.

On these facts, accepting the evidence in the light most favorable to the judgment, we find no error in the trial court's ruling in favor of Centerre. The telex contained the "past recollection recorded" of the clerk and as such was competent and substantive evidence. *Ferguson v. Overhead Door Company of Springfield, Inc.*, 549 S.W.2d 356 (Mo.App.1977) [1, 2]; *Watson v. Meredith Development Company*, 410 S.W.2d 338 (Mo.App.1966) [4, 5]. It was not objected to nor attacked for lack of foundation. The note established that authority for the change of tenor was obtained from Interco and that therefore Interco was aware on June 18 that the merchandise shipped would not serve as security for Boviard's debt. The evidence further indicates that Interco was aware that Boviard had the merchandise in possession no later than June 12, a date earlier than the maturity triggering presentment date reflected in the notice of maturity received by Interco. Interco's only contention of an absence of ordinary care by Centerre (see Sec. 400.4–202 RSMo 1986) was in failing to notify Interco that the merchandise had been released to Boviard without payment. The evidence justifies the conclusion that Interco was aware of that fact at least as early as Centerre was.

Judgment affirmed.

STEPHAN and SATZ, JJ., concur.